Curtis K. JOHNSON, Plaintiff–
Appellant,

v.

BUFFALO POLICE DEPARTMENT,
Defendant Appellee.

Docket No. 02–7105.

United States Court of Appeals,
Second Circuit.

Sept. 6, 2002.

Curtis K. Johnson, pro se, Buffalo, NY, for Plaintiff–Appellant.

Michael B. Risman, Corporation Counsel for the City of Buffalo, Buffalo, NY, for Defendants–Appellees.

Present MESKILL, CARDAMONE and STRAUB, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby **AFFIRMED.**

Plaintiff–Appellant Curtis K. Johnson, *pro se*, appeals from a judgment of the United States District Court for the Western District of New York (John T. Curtin, *Judge*) granting the motion by Defendant–Appellee Buffalo Police Department ("Buffalo P.D.") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. We affirm.

### I.

In August 1998, Johnson filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), alleging that he suffered various acts of discrimination during the course of his seven-years' employment as a police officer with the Buffalo P.D. Johnson claimed that because he was African–American, he was at various times given the least desirable assignments, subjected to discipline disproportionate to that which was imposed on similarly situated white officers, exposed to "white supremacist literature," and targeted with racial epithets. Johnson further alleged that his termination on March 17, 1995, was based impermissibly on his race.

The Buffalo P.D. moved for summary judgment, and the District Court granted the motion in July 2001 on the grounds that: (1) all of Johnson's discrimination claims, other than his termination claim, were time-barred because Johnson failed to file an agency charge within 300 days of those alleged incidents; (2) the continuing violations doctrine did not excuse the time-bar as Johnson failed to allege an ongoing discriminatory policy and as the various incidents were discontinuous; and (3) although Johnson was able to establish a prima facie case of employment discrimination, he provided no evidence that the Buffalo P.D.'s proffered reason for terminating him—his history of disciplinary infractions—was pretextual.

We review the District Court's grant of summary judgment *de novo*. *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir.1999). In addition, *pro se* submissions are construed liberally and are treated as raising the strongest arguments that they might suggest. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

### II.

■ When a party moves for summary judgment against a *pro se* litigant, we require that either the movant or the district court provide the *pro se* litigant with notice of the consequences of failing to respond to the motion. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir.1999). Lack of such notice will result in a reversal of summary judgment. *Id.* at 620. On the other hand, when, it is "reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it," the failure to provide notice will be deemed harmless. *Sawyer v. Am. Fed'n of Gov't Employees*, 180 F.3d 31, 35 (2d Cir.1999).

Neither the Buffalo P.D. nor the District Court gave Johnson the requisite notice under *Vital*. It nonetheless appears that Johnson sufficiently understood the consequences of not responding to the motion. First, Johnson filed two detailed submissions in opposition to summary judgment, including over 100 pages of exhibits. Second, Johnson used his submis-

sions to counter the Buffalo P.D.'s arguments and exhibits, in line-by-line fashion, and he further argued that a trial ultimately was necessary to prove the "real" facts as opposed to the facts according to the Buffalo P.D. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (summary judgment was appropriate when the *pro se* litigant filed a 17–page detailed affirmation of her version of the facts); *Sawyer,* 180 F.3d at 36 (*pro se* litigant understood consequences when the litigant submitted a "summary" containing conclusory allegations of a conspiracy against him and other documents in an attempt to prove such conspiracy, and his papers stated that he "looked forward to trial"); *M.B. # 11072–054 v. Reish,* 119 F.3d 230, 232 (2d Cir. 1997) (no reversal required where the *pro se* litigant's submissions included a 27–page declaration of facts with 104 pages of exhibits, a 40–page memorandum of law, a counterstatement of disputed facts, a cross-motion for summary judgment, and a request for further discovery).

### III.

Title VII requires an aggrieved party to file a charge of discrimination with either the Equal Employment Opportunity Commission or New York State Division of Human Rights ("NYSDHR") within 300 days of the alleged act of discrimination; the failure to do so will result in the claims being time-barred. 42 U.S.C. § 2000e–5(e)(1); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). Johnson filed his charge with the NYSDHR on June 9, 1995. The only incident of alleged discrimination that occurred within 300 days of that date was Johnson's termination on March 17, 1995. Accordingly, the only timely claim is the one for discriminatory termination.

■ The continuing violations doctrine does not extend the filing period in this case. We have previously applied the continuing violations doctrine so that if a plaintiff files a timely agency charge about a particular discriminatory act committed in furtherance of an "ongoing policy of discrimination," the statute of limitations is extended "for all claims of discriminatory acts committed under that policy." *See Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 82 (2d Cir.2001). It appears, however, that the Supreme Court has foreclosed use of the continuing violations doctrine in this context. *See Nat'l R.R. Passenger Corp. v. Morgan,* —— U.S. ——, ——–——, 122 S.Ct. 2061, 2069–73, 153 L.Ed.2d 106 (2002); *see also Bauer v. Bd. of Supervisors,* 44 Fed.Appx. 194, 198 (9th Cir.2002) (After *Morgan,* "the continuing violations doctrine may not be applied to incorporate untimely claims for discrete discriminatory acts even though they may be related to a timely claim."). In any event, even in the absence of *Morgan,* the continuing violations doctrine would not be available to Johnson as all of the untimely incidents of discrimination alleged were discontinuous in time with one another and with the sole timely act alleged—i.e., his termination. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir. 1998).

### IV.

■ In response to Johnson's prima facie case of discrimination, the Buffalo P.D. offered a legitimate, non-discriminatory reason for its decision to terminate Johnson: He had been disciplined repeatedly for violating department regulations, including tardiness, missed court appearances, sleeping on duty, returning late from lunch, use of excessive physical force, excessive "calling in sick," failure to appear at a police commissioner conference, being late for a police commissioner conference, losing a bulletproof vest (twice),

and allowing his service revolver to be stolen after carelessly leaving the gun in an unsecured area of his residence (twice). By 1993, Johnson's disciplinary violations had earned him a total of 109 days of suspension.

Our review of the record leads us to agree with the District Court that, other than unsubstantiated allegations and conclusory assertions, Johnson failed to set forth sufficient evidence to suggest that the reason for termination proffered by the Buffalo P.D. was pretextual. Accordingly, the motion for summary judgment was properly granted. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717 (2d Cir.1994) ("[t]o defeat a properly supported motion for summary judgment, plaintiff must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false") (internal quotation marks and citation omitted); *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.1999) (the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that "its version of the events is not wholly fanciful").

## V.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED**.