**Dean NASCA, Plaintiff,**

v.

**The COUNTY OF SUFFOLK, Police Officer Michael Conklin, Peter Frank, William G. Ford and John Does 1–10, said names being fictitious and intending to represent employees, agents and assigns of the County of Suffolk, Defendants.**

**No. 09–cv–00023 (WFK)(ETB).**

United States District Court, E.D. New York.

March 26, 2013.

Dean Nasca, Bayport, NY, pro se.

Richard T. Dunne, Suffolk County Department of Law, Hauppauge, NY, for Defendants.

## DECISION AND ORDER

WILLIAM F. KUNTZ II, District Judge.

Dean Nasca ("Plaintiff") commenced this action *pro se* against the County of Suffolk, Police Officer Michael Conklin, Peter Frank, William G. Ford, and John Does 1–10 (collectively "Defendants") in connection with a series of incidents which began when Plaintiff was issued a traffic summons for failure to wear a seatbelt in violation of New York State Vehicle and Traffic Law § 1229–c(3). Plaintiff seeks recovery under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 for violation of his rights under the First, Fourth, Fifth and Fourteenth Amendments. Defendants move for summary judgment and Plaintiff moves to compel Defendants to produce additional discovery. For the reasons that follow, this Court grants Defendants' motion and denies Plaintiff's motion as moot.[1]

## I. Factual Background

On consideration of a motion for summary judgment, the Court construes the

---

**1.** Plaintiff correctly points out Defendants failed to submit a "Notice to *Pro Se* Litigant Who Opposes a Motion For Summary Judgment," as required by Local Rule 56.2. *See, e.g.,* Pl's Br. at 1. Nonetheless, Plaintiff "has demonstrated a clear understanding of the nature and consequences of a summary judgment motion." *Schafler v. Summer,* 63 Fed. Appx. 581, 583 (2d Cir.2003). Therefore, the Court in its discretion concludes that the lack of notice does not warrant denial of Defendants' motion. *See In re Parikh,* 09–CV–227, 2009 WL 2383032, at *2 (E.D.N.Y. July 30, 2009) (Bianco, J.) (noting "[i]t is ... well-settled that a court has broad discretion to overlook technical violations of local rules").

facts in the light most favorable to the plaintiff, the non-moving party. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). Because the Plaintiff is *pro se*, the Court has liberally construed the record in this case, including Plaintiff's complaint and opposition memorandum, Plaintiffs "cross-motion" to compel discovery, both parties' Rule 56.1 statements, and the evidence submitted by both parties. The essential facts are undisputed, except where noted.

On January 7, 2006, Police Officer Michael Conklin ("Conklin") initiated a traffic stop of Plaintiffs vehicle on Gillette Avenue in Suffolk County, New York, sometime between 10:10 and 10:45 a.m. *See* Pl.'s 56.1 St., at ¶ 5; Pl.'s 56.1 Counterst., at ¶ 1.[2] During the traffic stop, Conklin asked Plaintiff to produce his license, registration and insurance card, which Plaintiff provided. Pl's 56.1 Counterst., at ¶ 3. After obtaining Plaintiff's pedigree information, Conklin issued Plaintiff a uniform traffic summons for failing to wear a seatbelt in violation of New York State Vehicle and Traffic Law § 1229–c(3). *Id.* at ¶ 4. The parties agree that Conklin did not search or otherwise physically come in contact with Plaintiff. *Id.* at ¶ 6. However, Plaintiff asserts that the traffic stop amounted to a detention and seizure of Plaintiff's vehicle because Conklin stated "It's a small world, I should be careful when I sue police officers, they stick together, and that, you know, you never know when at a traffic incident an officer may be required to pull his gun," or something to that effect. *Id.* at ¶ 5. Defendants dispute that any such statement was made and Conklin denies any knowledge of Plaintiffs prior

lawsuit against another police officer,[3] let alone making any reference to it. *See* Defs.' 56.1 St., at ¶ 23; Defs.' Reply 56.1 St. at 3.

At a Traffic Violation Bureau hearing on April 7, 2006, Judge Edward Kowalski found Plaintiff guilty of operating his vehicle without a seatbelt and imposed a fine. Pl.'s 56.1 Counters., at ¶ 9; Defs.' 56.1 St., at 9. The parties dispute the amount of this fine. Pl.'s 56.1 Counterst., at ¶ 9; Defs.' 56.1 St., at ¶ 9 (Plaintiff maintains he was fined $130; Defendants assert the fine was for $40.) Plaintiff asserts that Judge Kowalski's finding was subsequently reversed and he was refunded his money, a fact Defendants dispute as unsupported by any evidence. Pl.'s 56.1 Counterst, at ¶ 9; Defs.' 56.1 St., at ¶¶ 9, 27.

On June 2, 2008, Plaintiff filed a Freedom of Information Law ("FOIL") request, seeking GPS location data for Conklin's car from the date and time the subject traffic summons was issued. Pl.'s 56.1 Counterst, at ¶ 10. Later in June, having received no response to his FOIL request, Plaintiff sent a letter to the Suffolk County Attorney's Office, appealing the denial of his request. *Id.* at ¶ 11. Defendant William G. Ford ("Ford"), then Assistant County Attorney, denied Plaintiff's appeal on July 14, 2008. *Id.* at ¶ 12. Plaintiff subsequently initiated an Article 78 proceeding, essentially appealing Ford's decision. *See* Defs.' 56.1 St., at ¶ 13. Ford submitted an affirmation in the proceeding and attached an affidavit from Defendant Peter Frank ("Frank"), a civilian database manager for the Suffolk County Police Department. *Id.* at ¶ 14. On January 20,

---

**2.** By citing to the parties' Local Civil Rule 56.1 Statements of Undisputed Facts, the Court incorporates by reference all relevant sources cited therein.

**3.** The prior lawsuit against Suffolk County Police Officer Joseph Clements, identically

styled as *Nasca v. County of Suffolk*, was dismissed by this Court, pursuant to Defendants' motion for summary judgment, four days before the instant action was filed. 05–cv–1717, 2008 WL 53247 (E.D.N.Y. Jan. 2, 2008) (Bianco, J.).

2009, the Article 78 proceeding before Judge William B. Rebolini was resolved in Plaintiff's favor, but the Court noted that the requested records had been lost. *Id.* at ¶ 15; Pl.'s 56.1 Counterst., at ¶ 15. The parties dispute the cause of this loss. Defendants maintain that the records were lost due to a system-wide upgrade that covered every vehicle in the Police District during the relevant time period. *See* Defs.' 56.1 St., at ¶ 26. Plaintiff maintains that the records were deliberately lost or are being withheld as part of a conspiracy to deprive him of his constitutional right to obtain and review the records. *See* Compl. at ¶ 42; Pl.'s Cross–Mot. to Compel Disc. at ¶ 7–11.

## II. Procedural Background

Plaintiff initiated the instant action against Defendants Conklin, Ford and Frank on January 6, 2009, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. *See* Compl. at ¶¶ 23–35. Plaintiff also alleges, pursuant to 42 U.S.C. § 1985 and 1986, that the County and other unnamed County defendants engaged in a conspiracy to violate his civil rights. *Id.* at ¶¶ 36–48. Specifically, Plaintiff asserts that the County was negligent in preventing certain individual Defendants from intentionally destroying or concealing the GPS records sought by Plaintiff. *Id.* at ¶¶ 39–46. Finally, Plaintiff alleges he is entitled as a *pro se* plaintiff to recoup reasonable attorney's fees pursuant to 42 U.S.C. § 1988.[4] *Id.* at ¶ 50.

Defendants filed the instant motion for summary judgment on July 20, 2012. Plaintiff opposes Defendants' motion and simultaneously moves to compel Defendants to produce additional discovery. Plaintiff's "cross-motion" alleges that the GPS data sought in Plaintiffs June 2008

FOIL request is being wrongfully withheld and that Defendants are wrongfully withholding additional discovery related to (i) the exact location of Conklin's vehicle during the January 7, 2006 traffic stop, and (ii) Conklin's statement to Plaintiff during the traffic stop. *See* Pl.'s Cross–Mot. to Compel Disc. at ¶¶ 7–11, 16–25. The Court has fully considered all of the parties' submissions.

## III. Standard of Law
### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir.2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir.2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof con-

---

**4.** A *pro se* litigant, whether or not the litigant is a lawyer, is not entitled to attorney's fees under 42 U.S.C. § 1988. *Kay v. Ehrler,* 499

U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). Therefore, the Court will not further address this claim.

cerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

### B. *Pro Se* Standard

■ The Court must read *pro se* complaints liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) (citation omitted). "However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not support a cause of action." *Wright v. Krom,* No. 10 Civ. 3934, 2011 WL 4526405, at *2 (S.D.N.Y. Sept. 29, 2011) (Owen, J.) (internal quotation marks and citation omitted).

### C. Claims Arising Under 42 U.S.C. § 1983

■ Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To assert a claim under Section 1983, a plaintiff must allege or plead that: "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted).

### IV. Plaintiffs Section 1983 Claims

Plaintiff asserts claims under § 1983 for deprivations of rights guaranteed him by the First, Fourth, Fifth, and Fourteenth Amendments. These claims fail because the conduct complained of did not "deprive the plaintiff of a right guaranteed under the Constitution of the United States." *Nasca,* 2008 WL 53247, at *4 (internal editing and citation omitted).

### A. Search and Seizure

■ Defendants argue that Plaintiff's claim for false arrest must fail because Plaintiff was never placed in custody. *See* Defs.' Br. at 1. The Court agrees. Plaintiff's unreasonable search and seizure claim must fail as a matter of law based on the undisputed facts because it is well settled under Supreme Court and Second Circuit precedent that a routine traffic stop does not implicate Fourth Amendment rights.

■ The Supreme Court has incontrovertibly and repeatedly held that a "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute ... custody." *Howes v. Fields,* — U.S. ——, 132 S.Ct. 1181, 1190, 182 L.Ed.2d 17 (2012); *see also Berkemer v. McCarty,* 468 U.S. 420, 436, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (although "a traffic stop significantly curtails the freedom of action of the driver and the passengers," nevertheless, "persons temporarily detained pursuant to [ordinary traffic] stops are not in custody," even if the motorists are questioned during the stop) (internal quotation marks omitted); *United States v. Newton,* 369 F.3d 659, 669 (2d Cir.2004) (same); *Cruz v. Miller,* 255 F.3d 77, 82–83 (2d Cir.2001) (same). A routine traffic stop can only rise to a custodial detention under circumstances that create a "restraint on freedom of movement of the degree associated with a formal arrest." *Newton,* 369 F.3d at

670; *see also United States v. Ali,* 68 F.3d 1468, 1473 (2d Cir.1995).

Plaintiff argues that the traffic stop was unusually threatening and therefore rose to the level of arrest. *See* Pl.'s Br. at 6; Compl. at ¶¶ 23–30. However, even accepting as true Plaintiff's allegation that Conklin threatened him by stating "you never know when at a traffic incident an officer may be required to pull his gun," or something to that effect, it is undisputed that Conklin did not search Plaintiff's person or vehicle and did not detain Plaintiff any longer than necessary to issue a summons. *See* Pl.'s 56.1 Counterst. at ¶ 5–6. Therefore, the Court concludes as a matter of law that Plaintiff was not subjected to false imprisonment or false arrest during the routine traffic stop.

Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim under § 1983 is granted and the claim is dismissed with prejudice.

### B. Due Process

■ Plaintiff alleges that Conklin's traffic stop resulted in "fines and confiscation of the plaintiff's property without due process of law or compensation," in violation of the Fifth Amendment. Compl. at ¶ 27. However, the record reflects that Plaintiff's traffic stop and summons were followed by a Traffic Violation Bureau hearing where Plaintiff was found guilty and fined. *See* Pl.'s 56.1 Counterst., at ¶ 9. Moreover, according to Plaintiff, the fine was successfully appealed and Plaintiff was refunded his money. *See id.* Therefore,

the record does not reflect any deprivation of liberty or property, nor was Plaintiff denied access to the process or remedies available to contest any perceived deprivation.[5] *See, e.g., Azor v. City of New York,* No. 08 CV 04473, 2012 WL 1117256, at *5 (E.D.N.Y. Mar. 30, 2012) (Dearie, J.) ("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of ... the Due Process Clause ... if a meaningful post-deprivation remedy for the loss is available.") (internal editing omitted). Plaintiff's Fifth Amendment claim under § 1983 is therefore dismissed with prejudice.

### C. Freedom of Speech

■ Plaintiff alleges that Conklin's traffic stop was designed to "threaten[ ], intimidate[ ] and coerce[ ] [Plaintiff] ... *as a result of* Plaintiff's prior legal action against Police Officer Joseph Clements in violation of the plaintiff's civil rights and in violation of the First Amendment." Compl. at ¶ 25 (emphasis added). Defendants do not brief this claim, nor does Plaintiff defend it in his opposition motion. Nonetheless, Plaintiff's claim must fail because he has not alleged any facts tending to show that his actions were actually or effectively chilled. *See, e.g., Younger v. Harris,* 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In this case, Plaintiff was indisputably *not* chilled from pursuing litigation against municipal actors; as discussed *supra,* following the allegedly improper incident with Conklin, Plaintiff ini-

---

5. Plaintiff has arguably asserted a separate Fifth Amendment claim for violation of the Amendment's protection against self-incrimination, because he denies telling Conklin, against his own interest, that "he lived down the road and ... that was why *he wasn't wearing a seatbelt.*" *See* Defs.' 56.1 St., at ¶ 3 (emphasis added); Pl.'s 56.1 Counterst., at ¶ 3. However, because the Court has already concluded that the routine traffic stop did not amount to an arrest, which is to say,

an interaction "where a reasonable person in [plaintiffs] position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest," Plaintiff was not entitled to receive *Miranda* warnings and this claim fails as a matter of law. *See Newton,* 369 F.3d at 673 (quoting *Ali,* 68 F.3d at 1472) (referencing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

tiated multiple, additional litigations against the County and the County's agents. Moreover, "a showing of retaliatory intent is required for a retaliatory First Amendment claim," such as Plaintiff's. *Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 32 (2d Cir.1996). Because Plaintiff has not introduced any evidence tending to support the bare allegation that he was stopped in retaliation for his prior lawsuit against Clements, Plaintiff has failed to allege deprivation of his First Amendment rights. Therefore, Plaintiff's First Amendment claim under § 1983 is dismissed with prejudice.[6]

## V. Plaintiff's Claims under Sections 1985 and 1986

■■■ "To avoid · dismissal of a [42 U.S.C.] §.1985 claim, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) a person is either injured in his person or property or deprived of any right of a citizen of the United States; and (5) the conspiracy is motivated by some racial or perhaps otherwise invidious discriminatory animus." *K.W. ex rel. Brown v. City of New York,* 275 F.R.D. 393, 399 (E.D.N.Y. 2011) (Weinstein, J.). Having concluded that Plaintiff has failed to establish any injury or constitutional deprivation necessary to establish element (4), Plaintiff's claim of conspiracy under § 1985 must fail. *See id.; see also Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999). Having failed to establish a violation under § 1985, Plaintiff also cannot sustain a derivative cause of action under 42 U.S.C. § 1986.

*Thomas,* 165 F.3d at 147; *see also Zaidi v. Amerada Hess Corp.,* 723 F.Supp.2d 506, 516 (E.D.N.Y.2010) (Wexler, J.).

## VI. Conclusion

This Court finds Plaintiff has failed to adduce any evidence supporting his contentions that Defendants deprived or conspired to deprive Plaintiff of the rights guaranteed him by the United States Constitution. Based on the foregoing, the motion by the Defendants for summary judgment is GRANTED in its entirety and the motion of the Plaintiff to compel discovery is DENIED as moot.

*SO ORDERED.*

---

6. Contrary to Plaintiff's argument, the fact that Conklin did not initiate the traffic stop due to a high-speed chase does not create a presumption that the traffic stop was initiated to retaliate against Plaintiff. *See* Pl.'s Br. at 4.